IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRADERS CLOUD COMPANY LIMITED OF HONG KONG, a Hong Kong corporation; SPECTER GENERAL TRADING LLC OF DUBAI UNITED ARAB EMIRATES, a United Arab Emirates limited liability company; and WUKONG GROUP CO, LIMITED OF HONG KONG, a Hong Kong corporation,<br><br>*Plaintiffs*,<br><br>v.<br><br>SPRING VIEW FARMS AND LIVESTOCK LLC, a Pennsylvania limited liability company,<br><br>*Defendant*. | CASE No.: |

# COMPLAINT

Plaintiffs, (1) TRADERS CLOUD COMPANY LIMITED OF HONG KONG ("Trader"); (2) SPECTER GENERAL TRADING LLC OF DUBAI UNITED ARAB EMIRATES ("Specter"); and (3) WUKONG GROUP CO. LIMITED OF HONG KONG ("Wukong")(collectively "Buyers"), by and through the undersigned counsel, file their Complaint against Defendant, SPRING VIEW FARMS AND LIVESTOCK LLC ("Seller") and state:

### ALLEGATIONS AS TO PARTIES, JURISDICTION, AND VENUE

1. This is an action for damages within the jurisdiction of this Court.

2. This Court has jurisdiction under 28. U.S.C. § 1332 based on diversity citizenship. The amount in controversy exceeds $ 75,000.

3. Trader is a corporation organized and existing under the laws of Hong Kong with its principal place of business in Hong Kong.

4. Specter is a limited liability company organized and existing under the laws of the United Arab Emirates with its principal place of business in Dubai.

5. Specter's sole member, an individual, is a citizen of the Republic of India for the purposes of diversity.

6. Wukong is a corporation organized and existing under the laws of Hong Kong with its principal place of business in Hong Kong.

7. Defendant, Spring View, is a limited liability company organized and existing under the laws of the State of Pennsylvania with its principal place of business in Lehigh County, Pennsylvania.

8. Upon Plaintiffs' information and belief, all members of the Spring View are citizens of Pennsylvania.

9. Diversity jurisdiction is proper because all Buyers are citizens of foreign countries and Defendant is a citizen of Pennsylvania.

10. Venue is appropriate in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b)(1) because Defendant resides within that district.

11. This court has personal jurisdiction over Seller because Seller is a citizen of the State of Pennsylvania, has its principal place of business in the State of Pennsylvania, and conducts business in the State of Pennsylvania.

**FACTUAL ALLEGATIONS**

12. This case arises from a failed sale of Holstein Heifer cows.

13. On or around March 26, 2019, Buyers' agent non-party FNP International Trading FZ-LLC ("FNP") and Seller executed a Holstein Heifer Sales Agreement ("Agreement"). A true and correct copy of the Agreement is attached as **Exhibit A.**

14. At all relevant times, FNP was acting on behalf of Buyers.

15. After FNP executed the Agreement, FNP assigned its rights to the Buyers.

16. Under the Agreement, Seller agreed to sell and deliver 1,800 Holstein Heifer cows ("Animals") to Buyers in exchange for the total purchase price of $4,590,000.00. *See* Agreement, ¶¶ 2.1; 2.2.

17. The purchase price included the cost of the insurance for the shipment of the Animals. *See* Agreement, ¶ 2.1.

18. Seller agreed to deliver the Animals to Buyers in May 2019 on conditions CIF Port designated by Buyers in accordance with Incoterms 2010. *See* Agreement, ¶ 6.1.

19. Under CIF terms, Seller must procure insurance coverage for the cargo.

20. Buyers agreed to pay the purchase price in two installments:

   a. First, an advance payment of 10% of the purchase price to be received by Seller within seven calendar days after the execution of the Agreement; and

   b. Second, a payment of 90% of the purchase price to be received by Seller within seven calendar days before the shipment of the Animals and upon presentation of various documents, including a (i) signed commercial invoice and (ii) draft insurance certificate. *See* Agreement, ¶¶ 8.1.1; 8.1.2.

21. Between March 29, 2019 and April 20, 2019, Buyers paid a total of $2,708,850 to Spring View.

22. As such, Buyers complied with their obligations under the Agreement and paid way over 10% of the purchase price.

23. In May 2019, Seller informed Buyers that Seller could not ship the Animals as Seller did not have the necessary documentation.

24. Instead of terminating the Agreement, Buyer agreed to give Seller additional time to gather the documents necessary for shipment of the Animals (*see* Agreement, ¶ 8.1.2) and complete the shipment.

25. On or around June 17, 2019, Seller's representative Daniel Gutman represented to Buyers via email and/or phone that Seller procured insurance coverage for the Animals.

26. In support of the representation, Seller provided to Buyers two drafts of insurance policies from an insurance broker.

27. On or around June 19, 2019, Seller chartered a vessel to arrange the carriage of the Animals.

28. On or around July 22, 2019, Seller issued a commercial invoice to Buyers, reflecting an amended purchase price of $5,200,000.00 resulting from the parties' agreement to sell an additional 200 Animals to Buyers ("Invoice"). A true and correct copy of the Invoice is attached as **Exhibit B.**

29. On or before July 22, 2019, Buyers made bank transfers of $2,491,135.94 to pay the outstanding amount under the Invoice to Seller.

30. On or around, July 23, 2019, Seller started to load the Animals on the vessel.

31. However, due to unknown technical issues, Seller only received a part of Buyers' payment of $509,235.94, and the remainder of Buyers' payment of $1,981,900 did not reach Seller.

32. Consequently, on or around July 24, 209, Seller stopped loading the Animals on the vessel one day after it began loading.

33. The parties communicated regarding the bank transfers and agreed that Buyers were not at fault and the transfers did not go through for an unknown reason.

34. Accordingly, on or around July 27, 2019, the parties memorialized their discussion and executed an amendment to the Agreement, in which the parties agreed that Buyers' three payments with a total value of $1,981,900 which Buyers made on July 22, 2019, have not reached to Spring View's bank as of July 26, 2019 due to unknown reasons ("Amended Agreement"). A true and correct copy of the Amended Agreement is attached as **Exhibit C.**

35. The parties subsequently agreed that Buyer would pay the outstanding balance of $1,981,900 by August 2, 2019.

36. Between July 29, 2019, and August 1, 2019, Buyers transferred and Seller received $1,981,900, i.e., all the outstanding balance under the Invoice.

37. Due to the sensitive nature of the cargo (live cows), Buyers paid some of the outstanding balance from additional funds instead of waiting for the lost transfers to be completed.

38. In the end, Buyers paid and Seller received a total amount of $5,261,165.94, more than the purchase price of $5,200,000 reflected in the Invoice.

39. Seller acknowledged the receipt of $5,261,165.94 from Buyers.

40. The parties agreed that Seller would ship the Animals on the vessel departing from the port on August 3, 2019.

41. On or around August 2, 2019, Seller informed the vessel owner that Buyers paid the full purchase price and instructed the vessel to return to the berth.

42. However, instead of loading the balance of the Animals on the vessel, Seller instructed vessel owner to discharge the Animals back to port.

43. The reason that Seller gave to the vessel owner was that Seller was unable to obtain standard insurance on the London Market for the Animals.

44. However, Seller failed to make reasonable efforts, if any, to obtain the insurance.

45. Buyers later learned from the insurance broker who issued the draft policy that while Seller requested the insurance policy draft and requested a quote for transportation from USA to Georgia, Seller never submitted an order for said transport and/or for said insurance policy.

46. In the meantime, the vessel that Seller chartered for the Animals left the port on or around August 3, 2019.

47. Seller failed to load and ship the Animals on the vessel.

48. Seller attempted to induce Buyers into modifying the terms of the Agreement so that Buyers would agree to non-standard insurance or assume the risk of damage to the Animals without the insurance, otherwise Seller would not perform under the Agreement.

49. Buyers rejected Seller's coercion and cancelled the contract.

50. Buyers requested from Seller a refund of the $5,261,165.94 paid to Seller.

51. Seller refused to return any portion of the $5,261,165.94 to Buyers.

52. To date, Seller has retained the entire $5,261,165.94.

53. To date, Seller has retained the Animals.

54. Buyers had to retain the undersigned counsel and pay the undersigned counsel a reasonable fee for the prosecution of this action.

55. All the conditions precedent to the initiation of this action have occurred, have been satisfied, or have been waived.

## COUNT I – BREACH OF CONTRACT
**(all Buyers vs. Seller)**

56. Buyers reallege paragraphs 1 to 55 as if fully set forth herein.

57. Buyers and Seller entered into a valid and enforceable Agreement for the purchase and sale of the Animals, as amended by the Invoice and the Amended Agreement.

58. Buyers fully complied with their obligations under the Agreement by paying the full purchase price to Seller.

59. Seller materially breached the Agreement by failing to obtain the insurance for the Animals.

60. Seller materially breached the Agreement by failing to ship and deliver the Animals to Buyers.

61. As a direct and proximate result of Seller's material breaches, Buyers suffered general/actual and special/consequential damages.

62. Buyers' special/consequential damages include:

   a. Loss of milk production per day,

   b. Loss of meat due to deprivation from calves,

   c. Lost investment made for enlarging the existing farm,

   d. Deprivation of opportunity to invest money.

**WHEREFORE,** Plaintiffs (1) TRADERS CLOUD COMPANY LIMITED OF HONG KONG; (2) SPECTER GENERAL TRADING LLC OF DUBAI UNITED ARAB EMIRATES; and (3) WUKONG GROUP CO. LIMITED OF HONG KONG request that this Court enter judgement against Defendant SPRING VIEW FARMS and LIVESTOCK LLC for (1) general damages of $5,261,165.94; (2) special damages; (3) pre and post judgement interest; (4) costs; and (5) any other relief this courts deems just and proper.

**COUNT II – FRAUD**
**(all Buyers vs. Seller)**

63. Buyers reallege paragraphs 1 to 55 as if fully set forth herein.

64. Seller made a representation of material fact to Buyers' agent, FNP, that Seller has procured insurance coverage under the Agreement.

65. Seller demonstrated the insurance by providing two drafts of insurance policies to Buyers.

66. Seller knew that the representation was false and that Seller procured no insurance coverage.

67. In fact, Seller never intended to procure any insurance policies.

68. Instead, Seller intended that Buyers rely on the representations and the insurance policy drafts to induce Buyers to send Seller the remaining 90% of the purchase price.

69. Buyers justifiably relied on Seller's representations that Seller procured insurance and the policy drafts and sent the remainder of the purchase price to Seller.

70. After Seller received the entire purchase price, Seller revealed that Seller never had any intention to purchase insurance coverage for the Animals.

71. Instead, Seller intended to mislead Buyers to send the entire purchase price to Seller, upon which Seller attempted to coerce Buyers to accept non-standard insurance or assume the risk of loss and ship the Animals without insurance.

72. Seller's conduct was outrageous and fraudulent.

73. Seller's intent from the beginning was to lure Buyers to send the entire purchase price to Seller and keep the Animals, while giving Buyers false assurances of the procured insurance, only to then coerce Buyers into accepting heavily disadvantageous terms to Buyers.

74. As a direct and proximate cause of Seller's misrepresentation, Buyers suffered damages. As a direct and proximate result of Seller's material breaches, Buyers suffered general/actual and special/consequential damages.

75. Buyers' special/consequential damages include:

    a. Loss of milk production per day,

    b. Loss of meat due to deprivation from calves,

    c. Lost investment made for enlarging the existing farm,

    d. Deprivation of opportunity to invest money.

**WHEREFORE,** Plaintiffs (1) TRADERS CLOUD COMPANY LIMITED OF HONG KONG; (2) SPECTER GENERAL TRADING LLC OF DUBAI UNITED ARAB EMIRATES; and (3) WUKONG GROUP CO. LIMITED OF HONG KONG request that this Court enter judgement against Defendant SPRING VIEW FARMS and LIVESTOCK LLC for (1) general damages of $5,261,165.94; (2) special damages; (3) punitive damages; (4) pre and post judgement interest; (5) costs; and (6) any other relief this courts deems just and proper.

### COUNT III – UNJUST ENRICHMENT
**(all Buyers vs. Seller)**
(in the alternative to Count I - Breach of Contract)

76. Buyers reallege paragraphs 1 to 55 above as if fully set forth herein.

77. For the purposes of this count, Buyers allege that no contract formed between Buyers and Seller.

78. Buyers conferred a benefit on Seller by delivering payment of $5,261,165.94.

79. Seller knew of, accepted, and kept the payment.

80. Seller provided nothing in return to Buyers.

81. Under the circumstances, acceptance and retention of the benefit by Seller is inequitable.

82. As a direct and proximate result of Seller's wrongful acts, Buyers suffered damages.

**WHEREFORE,** Plaintiffs (1) TRADERS CLOUD COMPANY LIMITED OF HONG KONG; (2) SPECTER GENERAL TRADING LLC OF DUBAI UNITED ARAB EMIRATES; and (3) WUKONG GROUP CO. LIMITED OF HONG KONG request that this Court enter

judgement against Defendant SPRING VIEW FARMS and LIVESTOCK LLC for (1) general damages of $5,261,165.94; (2) special damages; (3) pre and post judgement interest; (4) costs; and (5) any other relief this courts deems just and proper .

.

                                                Respectfully submitted,

                                                **ZARWIN BAUM DEVITO KAPLAN SCHAER TODDY PC**
2005 Market Street, 16th Floor
Philadelphia, PA 19103
Tel: (215) 569-2800
Fax: (267) 765-9664
Email: dmtancredi@zarwin.com


By: */s/ Dawn M. Tancredi*
DAWN M. TANCREDI, Esq.
Pennsylvania Bar No.86542

and

**BARAKAT + BOSSA**
2701 Ponce de Leon Blvd., Suite 202
Coral Gables, Florida 33134
Tel: (305) 444-3114
Fax: (305) 444-3115
Email:  gbossa@b2b.legal
          service@b2b.legal

By: */s/ Giacomo Bossa*
GIACOMO BOSSA, Esq.
Florida Bar No.: 97817
*Admission pro hac vice pending*

Dated: March 24, 2023